UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARLENE WILLIAMS, | ) | No.  CV 06-3441-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On June 14, 2006, Darlene Williams ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for supplemental security income. On June 30, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On December 1, 2006, defendant filed an Answer to Complaint. On January 17, 2007, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On April 30, 2001, plaintiff filed an application for supplemental security income. (Administrative Record ["AR"] at 64-65). Plaintiff alleged that, beginning on January 1, 1972, she was unable to work because she suffered hepatitis C, a bullet lodged in her shoulder, and high blood pressure. (AR at 64, 78). The ALJ, sua sponte, amended the onset date to April 19, 2001. (AR at 20). The Commissioner denied plaintiff's application for benefits initially and upon review. (AR at 42-47, 52-55).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 56). On February 10, 2003, the ALJ conducted a hearing in Los Angeles, California. (AR at 233-40). Plaintiff appeared at the hearing without counsel and the ALJ continued the matter to allow plaintiff to retain counsel. (Id.). The continued hearing took place on November 5, 2003 in Los Angeles, California. (AR at 241-59). Plaintiff appeared at the hearing with counsel and testified. (AR at 244-53, 257-58). Sandra Trost, a vocational expert, also testified. (AR at 253-57).

On April 22, 2004, the ALJ issued his decision denying benefits. (AR at 20-27). In his decision, the ALJ concluded that although plaintiff suffered from hypertension, hepatitis C, alcohol abuse, and depressive disorder which were considered severe, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 26). The ALJ also found that plaintiff's complaints of totally disabling limitations were not totally credible. (Id.). The ALJ then determined that plaintiff was not able to perform her past relevant work, but could perform the work of a cleaner,

medium work; cleaner II; and laundry worker, medium  (AR at 26). Ultimately, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act.  (AR at 27).

On May 20, 2004, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  (AR at 13).  On April 4, 2006, the Appeals Council affirmed the ALJ's decision.  (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.   The ALJ failed to consider the opinion of the State Agency physician.

2.   The Commissioner failed to carry the administrative burden at Step 5 of the sequential analysis by defining the national economy as the entire United States.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and

consider adverse as well as supporting evidence. <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

## **DISCUSSION**

**A.    The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. <u>Bowen</u>, 482 U.S. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. <u>Id.</u> at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. <u>Id.</u> at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Id.</u> If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. <u>Id.</u> at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. <u>Id.</u> at 142. The claimant is entitled to disability benefits only if he is

4

not able to perform such work.  Bowen, 482 U.S. at 142.

**B.   Opinion of the State Agency Physician**

Plaintiff claims that the ALJ failed to acknowledge the opinion of the State Agency physician, C.H. Dudley, M.D., who opined that plaintiff suffered from marked and moderate mental limitations.  By failing to consider the State Agency physician's opinion, plaintiff contends that the ALJ failed to properly evaluate plaintiff's mental impairment in assessing her residual functional capacity.  As such, plaintiff claims, the ALJ's decision should be reversed.

Defendant responds that sufficient evidence supports the ALJ's findings regarding plaintiff's residual functional capacity.  First, the ALJ properly relied on the opinion of a consultative examiner who determined that plaintiff could work.  Second, defendant contends that plaintiff reported daily activities consistent with the residual functional capacity assessed by the ALJ.  Finally, defendant argues that the residual functional capacity findings assessed by the ALJ were consistent with the State Agency physician's assessment.  Thus, defendant contends that the ALJ did not err in evaluating plaintiff's residual functional capacity, notwithstanding the ALJ's failure to address the State Agency physician's opinion.

On June 18, 2002, Dr. Dudley completed a Medical Residual Functional Capacity Assessment of plaintiff and a Psychiatric Review Technique form.  (AR at 180-183, 184-197).  In the Mental Residual Functional Capacity Assessment, Dr. Dudley made summary conclusions with respect to plaintiff's limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption.  (AR at 180-81).  In 20 questions that encompassed these four categories, Dr. Dudley found that plaintiff was

5

not significantly limited in six areas,[1] moderately limited in 12 areas,[2] and markedly limited two areas.[3] (AR at 180-82). Defendant acknowledges that the ALJ failed to explicitly address Dr. Dudley's limitations.

In his decision, the ALJ assessed no impairment-based exertional limits on plaintiff's ability to work. (AR at 24). With respect to her non-exertional limitations, the ALJ found that plaintiff should not work with the public, she should have a simple task-oriented job that does not require group effort at problem solving, and her contact with others should be incidental to her work tasks. (Id.). These

---

[1] Dr. Dudley found plaintiff not significantly limited in her ability (1) to remember locations and work-like procedures, (2) to make simple work-related decisions, (3) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (4) to be aware of normal hazards and take appropriate precautions, (5) to travel in unfamiliar places or use public transportation, and (6) to set realistic goals or make plans independently of others. (AR at 180-81).

[2] Dr. Dudley found plaintiff moderately limited in her ability (1) to understand and remember very short and simple instructions, (2) to carry out very short and simple instructions, (3) to maintain attention and concentration for extended periods, (4) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) to sustain an ordinary routine without special supervision, (6) to work in coordination with or proximity to others without being distracted by them, (7) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (8) to interact appropriately with the general public, (9) to ask simple questions or request assistance, (10) to accept instructions and respond appropriately to criticism from supervisors, (11) to get along with coworkers or peers without distracting them or exhibiting behavior extremes, and (12) to respond appropriately to changes in the work setting. (AR at 180-81).

[3] Dr. Dudley found plaintiff markedly limited in her ability (1) to understand and remember detailed instructions and (2) to carry out detailed instructions. (AR at 180).

limitations comport with Dr. Dudley's limitations that plaintiff could not understand, remember, or carry out detailed instructions. (AR at 180). The ALJ's limitations, however did not address some of other restrictions assessed by Dr. Dudley, namely plaintiff's moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (AR at 180-81). Due to the omission of these restrictions in the ALJ's assessment, the Court finds that the ALJ failed to adequately address Dr. Dudley's assessment, as required by SSR 96-6p.[4]

Defendant claims that the ALJ's determination that plaintiff was able to perform simple, task-oriented work is supported by the assessment of a consultative examiner. On September 9, 2003, Roger A. Izzi, Ph.D., performed a Comprehensive Psychological Evaluation of plaintiff and diagnosed her with depressive disorder, NOS, and polysubstance dependence in complete remission by plaintiff's report. (AR at 222-27). Dr. Izzi further determined that plaintiff's test results were not valid due to her poor effort. (AR at 225-26). In

---

[4] SSR 96-6p states, "[ALJs] and the Appeals Council may not ignore [a state agency physician's] opinions and must explain the weight given to these opinions in their decisions."

1   accordance with Dr. Izzi's assessment, the ALJ found that plaintiff's
2   poor performance on mental testing rendered her credibility poor. (AR
3   at 24).
4       Generally, an ALJ should afford less weight to a non-examining
5   physician's opinion than to an examining physician's opinion. See
6   Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he
7   conclusion of a non-examining physician is entitled to less weight
8   than the conclusion of an examining physician."). Standing alone, a
9   non-examining physician's opinion cannot constitute substantial
10  evidence to reject an examining physician's opinion. See Lester v.
11  Chater, 81 F.3d 821, 831 (9th Cir. 1996) ("The opinion of a
12  nonexamining physician cannot by itself constitute substantial
13  evidence that justifies the rejection of the opinion of either an
14  examining physician or a treating physician.") (emphasis in original).
15  But unless he specifically rejects it, the ALJ must give a
16  nonexamining physician's opinion some weight. See Andrews, 53 F.3d at
17  1041 ("[T]he conclusion of a nonexamining expert is generally entitled
18  to less weight than the conclusion of an examining physician.
19  However, giving the examining physician's opinion more weight than the
20  nonexamining expert's opinion does not mean that the opinions of
21  nonexamining sources and medical advisors are entitled to no weight.")
22  (emphasis in original). Indeed, an ALJ may not ignore the opinion of
23  State Agency physicians and must explain the weight given to their
24  opinions. See SSR 96-6p.
25      While the ALJ may properly give more weight to the opinion of a
26  consultative examiner, the Court finds that the ALJ erred in failing
27  to specifically reject Dr. Dudley's assessment. Dr. Dudley completed
28  a comprehensive evaluation form whereby he responded to twenty

questions relating to plaintiff's limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. (AR at 180-81). Dr. Izzi, on the other hand, determined that plaintiff exhibited poor effort on the mental testing, which rendered his test results invalid. (AR at 225-26). As such, he did not render a residual functional capacity assessment. Given Dr. Izzi's lack of findings with respect to plaintiff's capabilities in contrast with Dr. Dudley's detailed findings, the Court finds that the ALJ's adoption of Dr. Izzy's assessment does not adequately address or reject Dr. Dudley's assessment. Accordingly, the ALJ's failure to specifically reject Dr. Dudley's findings constitutes grounds for remand.

**C. Reversal and Remand is Appropriate**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Id; see also Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must reexamine the medical record with respect to plaintiff's mental impairment to determine whether she retains the residual functional capacity to perform the work of a cleaner or a laundry worker.[5]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: April 10, 2007

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[5] In the Joint Stipulation, plaintiff also claims that the Commissioner failed to carry the administrative burden at Step 5 of the sequential analysis by defining the national economy as the entire United States. As explained above, however, the ALJ's failure to properly evaluate the assessment of Dr. Dudley constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.